UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NO. 10-299 |
| YKEITH ANDREWS | * | SECTION: "A" |

**YKEITH ANDREWS'S NOTICE OF INTENT TO INTRODUCE "SIMILAR ACT" EVIDENCE PURSUANT TO RULE 404(b) OF THE FEDERAL RULES OF EVIDENCE AND INCORPORATED MEMORANDUM**

The defendant YKEITH ANDREWS, through undersigned counsel, notices his intent to introduce "similar act" evidence regarding Drug Enforcement Administration Agent Chad Scott and Hammond Police Officer Rodney Gemar to support the defendant's theory of the case. Agent Scott and Officer Gemar instituted this federal prosecution to ensure that the defendant was charged with a conspiracy charge that carries the highest possible penalty because he refused to cooperate and provide other information regarding drug dealing activities in the Tangipahoa Parish area. Agent Scott and Officer Gemar have the motive, opportunity, and intent to manipulate the criminal justice process through their selection of forum, charges, and through unsupervised use of informants.

**I.**

**Federal Rule of Evidence 404(b) is not solely a Government tool.**

The use of Federal Rule of Evidence 404(b) is not limited to evidence of other crimes, wrongs or acts of the defendant. As the rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character **of a person** in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Federal Rule of Evidence 404 (b) (emphasis added). It is not limited to evidence against the defendant and may be used against witnesses such as Agent Scott and Officer Gemar. Furthermore, the rule only requires the Government to provide notice upon a defendant's request .

In ***United States v. McClure***, 546 F.2d 670, 672-673 (5th Cir. 1977), the Fifth Circuit ruled that a district court committed reversible error in refusing to allow the defendant to call witnesses to testify regarding the prior bad acts of a government informant and wrote:

> We hold that under Fed.R.Evid. 404(b) evidence of a systematic campaign of threats and intimidation against other persons is admissible to show lack of criminal intent by a defendant who claims to have been illegally coerced. Rule 404(b) is normally used by the government to show evidence of prior similar offenses committed by the defendant. In such cases, strict standards of admissibility protect the defendant from prejudice.

> (Citations omitted) But in the case before us it was the defendant who sought to introduce evidence of the informant's scheme. His right to present a vigorous defense required the admission of the proffered testimony. The fact that it referred exclusively to threats made by Carroll after the sales by appellant affect its weight but not its admissibility.

As the Fifth Circuit recognized in **_McClure_**, the standards for admissibility of such evidence is relaxed when the defendant, as opposed to the Government, seeks to introduce 404(b) evidence. The concerns about whether the Government's admission of 404(b) evidence against the defendant would unfairly prejudice jurors against the defendant no longer exist. **_United States v. Krezdorn_**, 639 F.2d 1327 (5th Cir. 1981), *cert. denied*, 465 U.S. 1066 (1981). Also see **_United States v. Stephens_**, 365 F.3d 967, 975 (11th Cir. 2004), quoting **_United States v. Cohen_**, 888 F.2d 770, 776 (11th Cir. 1989) ("[Rule 404(b)] is one of inclusion which allows such evidence unless it tends to prove only criminal propensity.")

The evidence sought to be introduced is not offered to attack the credibility of Agent Scott and Officer Gemar pursuant to Federal Rule of Evidence 608. The evidence is being introduced to prove the defense's theory which is that Agent Scott and Officer Gemar use questionable tactics to achieve the results they want and that they are motivated to use these tactics against the defendant because he refused to cooperate with them.

## II.

**The evidence and testimony sought to be introduced.**

Agent Scott and Officer Gemar never arrested Tyrone Broadway for conspiracy to distribute and possess with intent to distribute crack cocaine although Tyrone Broadway is

3

seen and heard on the Government's videotapes negotiating and "ordering up" crack cocaine for the Government's informant Lewis "Lucky" Smith. Agent Scott and Officer Gemar never sought to have Tyrone Broadway prosecuted by the state authorities either. In exchange for his testimony against Ykeith Andrews, Tyrone Broadway has not been prosecuted. Their "handling" of Tyrone Broadway illustrates the ability of Agent Scott and Officer Gemar to choose who to prosecute and who not to prosecute. It shows the limitless opportunities they have, as well as their motive and intent, to manipulate and punish the defendant and make an example out of him for failing to cooperate.

This power to dismiss cases or institute cases is a longstanding and long wielding power exercised by Agent Scott extending back to 1994. Agent Scott arrested Leontine Morgan aka Leon Morgan aka Boney Macaroni for selling crack cocaine. Leontine Morgan is a longtime informant for Agent Scott.[1] Mr. Morgan was never convicted of those charges. The state's crack distribution case against Leontine Morgan was allowed to prescribe by failing to set the case for trial. Hearing on Motion to Quash, pages 218-219, 224-225. Despite an 18 year history of providing information to Agent Scott, the Drug Enforcement Administration has no records documenting Leontine Morgan as a source of information.[2]

---

[1] The term "longtime informant" is being used because at a prior hearing, Agent Scott denied Mr. Morgan was one of his snitches. Hearing on Motion to Quash, page 33, line 19. Agent Scott did admit that he's known Mr. Morgan since 1994 when he arrested Mr. Morgan for selling crack cocaine and that he has since received a lot of information regarding drug dealers and drug dealing from Mr. Morgan. Hearing on Motion to Quash, pages 35-38.

[2] Hearing on Motion to Quash, page 193, this Honorable Court reviewed the files DEA provided pursuant to the defendant's subpoena duces tecum and the Court stated that, "They [DEA] did not indicate or they stated that they did not have a file on Leon Morgan."

This is further proof that Agent Scott had the means and opportunity to make cases vanish for people who cooperate for him and he is able to do so with little supervision or oversight.

The defense seeks to introduce recordings of the defendant's telephone calls, which the Government obtained from the Orleans Parish Prison, to bolster the defense theory that Agent Scott used his longtime informant Leontine Morgan to threaten and coerce Andrews into cooperating after Andrews indicated that he did not wish to talk with Agent Scott. According to the **October 26, 2010**, prison telephone call, Leon Morgan tells Andrews:

> You hear beeping...everything is being recorded. Right now they are about to fuck your world up. You need to from what he is telling me..They are going to multi bill you. And you go to court tomorrow. Pick what side you want to be on so I can call the white boy tonight. You want to do 15, do 15, ...Tyrone is up to some funny. They got you ... Paw Paw got picked up and let go. Paw Paw dropped the dime. You want me to call them and tell them you want to cut a deal in the morning. What you want me to tell them that you are going to do. 20 came before zero, I'll make your mind up for you. I'm going to call him up right now and tell him. You didn't have to be up there now. You and Vern want to be hard. We are about to make a deal with that white boy and let that white boy know...

The telephone conversation occurred the night before Mr. Andrews was brought to federal magistrate court for his detention hearing.[3] The defendant was brought to court for his initial

---

[3] Leontine Morgan's reference to a man named "Vern," is Leontine Morgan's brother, and Ykeith's uncle, Devern Morgan. Devern Morgan was arrested by Agent Scott pursuant to information provided by an Agent Scott informant and prosecuted in **USA v. Devern Morgan, et al.**, USDC No. 08 -78 "R." When Devern Morgan made his initial appearance in federal court on March 25, 2008, and United States Magistrate Judge Louis Moore, Jr. immediately ordered that Mr. Morgan receive medical care for nose pain and "blood in his throat." A copy of this Magistrate Moore's order is attached hereto as Exhibit "A." According to the criminal complaint, Mr. Morgan

5

appearance on October 25, 2010, and counsel was appointed to represent him. Rec. Doc. 6. Agent Scott's use of Leontine Morgan was a means for Agent Scott to communicate with Mr. Andrews without having Mr. Andrews's lawyer present. Through Leontine Morgan, Agent Scott was able to tell Mr. Andrews that he could avoid a multiple bill and that he could avoid a mandatory minimum if he cooperated. Mr. Morgan emphatically stressed that this decision needed to be made before the defendant went to court and met his lawyer. Mr. Morgan was acting as an agent for Agent Scott, not as a concerned family member.

The defense seeks to introduce evidence regarding the 1997 civil rights lawsuit brought by Dawnita Hodge, a Hammond Police Department officer, against Drug Enforcement Agents Scott and Keith Billiot. **_Hodge v. Laryisson, et al._**, USDC EDLA No. 97-555 "J." A copy of the lawsuit is attached hereto as Exhibit "B." During the course of the lawsuit, Agent Scott and his attorney went to great lengths to avoid divulging the identity of the confidential informant. On November 7, 2000, the district court ordered that the confidential informant be produced for a deposition no later than November 13, 2000, at 5:00 p.m. Please see a copy of the district court's minute entry which is attached hereto and labeled Exhibit "C." The defendants continued to circumvent the district court's orders. Please see a copy of plaintiff counsel's November 14, 2000, letter to the district court and the district court's November 14, 2000 minute entry, Exhibit "D". On the date and time of the confidential informant's deposition, the defendants informed plaintiff's counsel that

---

struggled with the agents and had to be physically subdued.

Kendrick McGowan had just been released from the Tangipahoa Parish Prison where he was being held and they did not know his current whereabouts. On November 16, 2000, the district court ordered all parties to appear in court. A settlement was reached. A copy of the district court's November 16, 2000 minute entry is attached as Exhibit "E".

While Ms. Hodges's lawsuit was pending, the Drug Enforcement Administration hired Agent Scott. This lawsuit did not result in any investigation being brought against him nor was he ever reprimanded by either the Tangipahoa Parish Sheriff's Office or the Drug Enforcement Administration. Likewise, Officer Gemar and the city of Hammond were sued in 2009 because Officer Gemar beat a man and arrested him on trumped up charges for saying Officer Gemar stole money from his house during the service of a bad search warrant. A copy of the ***Richardson v. Gemar and the City of Hammond***, USDC EDLA No. 09-3963 "C" lawsuit is attached hereto as Exhibit "F." Without the defendants' even filing an answer, the defendants dropped the state charges against Mr. Richardson and settled the lawsuit on August 31, 2009. A copy of the docket and the district court's order of dismissal are attached hereto as Exhibit "G" Drug Enforcement Agent Keith Billiot previously testified that he supervised both Agent Scott and Officer Gemar. Agent Billiot testified that he was never told that a federal police brutality lawsuit had been filed against Officer Gemar. As Agent Billiot said, "As I testified, if there are any shortcomings [regarding the local officers working on his federal task force], I'm not made aware of them." See Hearing on the Motion to Quash, pages 300 and of Motion to Quash, pages 300 and 302. The above referenced

7

incidents demonstrate that Agent Scott and Officer Gemar have the intent, means, and opportunity to manipulate the state and federal judicial systems to their own advantage without fear of retribution. They circumvent state and federal laws, as well as court orders, to obtain whatever results they desire. In this case, Agent Scott and Officer Gemar had the motive, opportunity, and intent to use questionable tactics to punish the defendant for failing to cooperate. In the instant case, the defense respectfully requests permission to use the evidence provided above to prove its theory of the case.

Respectfully submitted, this 1st day of February, 2012.

VIRGINIA LAUGHLIN SCHLUETER
Federal Public Defender


/s/ Valerie Welz Jusselin
VALERIE WELZ JUSSELIN
Assistant Federal Public Defender
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
Telephone: (504) 589-7930
Bar #19825
Email: valerie_jusselin@fd.org

**CERTIFICATE**

I hereby certify that on February 1, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Andre Jones, Assistant United States Attorney.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

/s/ Valerie Welz Jusselin
VALERIE WELZ JUSSELIN
Assistant Federal Public Defender